SAFEWAY STORES,
INCORPORATED, Petitioner,

v.

CERTAINTEED CORPORATION and
Certainteed Products Corp., et al.,
Respondents.

No. C–3838.

Supreme Court of Texas.

May 7, 1986.
Rehearing Denied June 18, 1986.

George A. Staples, Jr., Hurst, Phillip W. Gilbert, Riddle & Brown, Russell W. Schell, Dallas, for petitioner.

Mike M. Tabor, Clark, West Keller, Butler & Ellis, Hollye C. Fisk, Greenberg, Benson, Fish & Fielder, Dallas, for respondents.

McGEE, Justice.

This case involves a contract for the sale of goods governed by the Texas Business & Commerce Code. Safeway Stores sued Certainteed Corporation and Certainteed Products Corporation for alleged breach of express and implied warranties in connection with roofing material affixed to Safeway's warehouse roof. The trial court granted an instructed verdict for Certainteed because Safeway failed to prosecute its claim within the statute of limitations. The court of appeals affirmed the trial court's judgment. 687 S.W.2d 22. We must decide whether Certainteed's express and implied warranties explicitly extend to future performance under Tex.Bus. & Com. Code Ann. § 2.725(b) (Tex.UCC) (Vernon 1968) so that Safeway's cause of action did not accrue until discovery of the breach. Because we hold there is a fact issue whether Certainteed's express warranties explicitly extend to future performance, we reverse the judgment of the court of appeals and remand the cause to the trial court.

In 1970, Safeway Stores contracted with Herman Smith & Company to build a warehouse. Herman Smith subcontracted with Gunn & Briggs to install a roof. The original plans and specifications called for a "20-year bonded type built-up roof." Gunn & Briggs contacted Certainteed to supply roofing material. Certainteed advertised that its "Dual 80" two-ply roof was "bondable up to 20 years." The Safeway/Herman Smith contract was amended to include the "Dual 80" roof and construction of the roof was completed in 1970.

Safeway first experienced leaks in the roof in 1977. Nine years after the roof was completed, in 1979, Safeway filed this action against Certainteed alleging breach of express and implied warranties. The trial court granted an instructed verdict for Certainteed.

Safeway appealed. The court of appeals affirmed the trial court's judgment, holding that Certainteed's advertisement did not create a warranty that explicitly extended to future performance. Thus, Safeway's action was barred by the four-year statute of limitations as suit was brought nine years after the roof was "delivered." Tex. Bus. & Com.Code Ann. § 2.725 (Tex.UCC) (Vernon 1968).

Safeway contends that Certainteed's implied and express warranties covering its roofing material fall under the exception to section 2.725. It argues that the warranties explicitly extended to future performance; therefore, the four-year statute of limitations should not begin to run until discovery of the breach, i.e., the roof started leaking.

The purpose of a statute of limitations is to establish a point of repose and to terminate stale claims. Society's interest in repose is to have disputes either settled or barred within a reasonable time. It is based on the theory that the uncertainty and insecurity caused by unsettled claims hinder the flow of commerce. *See Wood v. Carpenter*, 101 U.S. [11 OTTO] 135, 139, 25 L.Ed. 807 (1879). The limitations statute prevents fraudulent and stale claims from springing up many years after a sale and avoids the attendant problems of litigating

a claim when memories have faded and documents have been destroyed.

■ As a statute of limitations, section 2.725 seeks to balance two conflicting social policies. If implied warranty liability extends past a definite time, merchants will not be able to close their books with certainty; yet, if merchants are allowed to close their books with certainty; buyers who later discover defects will have no remedy. Section 2.725 states:

(a) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued ...

(b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Tex.Bus. & Com.Code Ann. § 2.725 (Tex. UCC) (Vernon 1968). The language of the statute clearly states that a cause of action in breach of warranty arising from a contractual relationship accrues at the time of delivery, not at the time of discovery. This occurs "regardless of the aggrieved party's lack of knowledge of the breach" unless the exception applies. *Id.*

The drafters' intentions were to establish a reasonable period of time, four years, beyond which business persons need not worry about stale warranty claims. *Standard Alliance Industries v. Black Clawson Co.*, 587 F.2d 813, 820 (6th Cir.1978). The Code seeks "to make uniform the law among the various jurisdictions" to provide "needed relief for concerns doing business on a nationwide scale." Tex.Bus. & Com. Code Ann. § 1.102(b)(3) and § 2.725 comment (Tex.UCC) (Vernon 1968). Adoption of a uniform date of accrual and rejection of the discovery rule in warranty cases is a permissible means adopted by the state legislatures to protect commercial transactions. This end would not have been accomplished had the legislatures merely adopted a four-year statute of limitations without specifying when the statute would begin to run.

It is clear that a buyer and a seller can freely negotiate to extend liability into the future; that is why specific allowance was made for warranties "explicitly" extending to future performance. *Black Clawson Co.*, 587 F.2d at 820. Then, the warranty cause of action does not accrue until discovery of the breach. Tex.Bus. & Com. Code Ann. § 2.725(b) (Tex.UCC) (Vernon 1968).

## IMPLIED WARRANTY

■ Implied warranties relate to the condition, kind, characteristics, suitability, etc. of sold goods at the time of sale; thus, the statute of limitations on implied warranties runs from the date of sale. *Iowa Manufacturing Co. v. Joy Manufacturing Co.*, 669 P.2d 1057, 1060 (Mont.1983). *See Citizens Utilities Co. v. American Locomotive Co.*, 11 N.Y.2d 409, 417, 230 N.Y. S.2d 194, 198, 184 N.E.2d 171, 174 (1962); *Allen v. Todd*, 6 Lans. 222 (N.Y.1872). The drafters of the Uniform Commercial Code intended to reserve the benefits of an extended warranty to those who explicitly bargained for them. *Raymond-Dravo-Langenfelder v. Microdot, Inc.*, 425 F.Supp. 614, 618 (D.Del.1976). Therefore, only *express* warranties may explicitly extend to future performance. *Dickerson v. Mountain View Equip. Co.*, 109 Idaho 711, 710 P.2d 621, 626 (1985); *G.M. v. Tate*, 257 Ark. 347, 352, 516 S.W.2d 602, 606 (1974); *Wilson v. Massey-Ferguson, Inc.*, 21 Ill. App.3d, 867, 315 N.E.2d 580, 583 (1974); *South Burlington School District v. Calcagin-Frazier-Zajchowski Architects, Inc.*, 138 Vt. 33, 410 A.2d 1359, 1366 (1980); *Wright v. Cutler-Hammer, Inc.*, 358 So.2d 444, 445–46 (Ala.1978). Annot., 93 A.L. R.3d 690 § 2 (1979); 67 Am.Jur.2d, *Sales* § 700 (1985).

The Code did not intend that an *implied* warranty could be explicitly extended to future performance. The words "explicit" and "implied" are contradictory. "Explicitly," while not defined in the Code, means "expressly and not merely by implication"; "being without vagueness or ambiguity: leaving nothing implied: unequivocal." Synonyms for the word "explicit" include "express," "specific," and "definite." 3 Oxford English Dictionary 437–38 (1933); Webster's Third World International Dictionary 801 (unabridged 1971).

The exception relied upon by Safeway is immediately preceded by the statement that the cause of action accrues when the breach occurs, regardless of lack of knowledge of the breach. Tex.Bus. & Com. Code Ann. § 2.725(b) (Tex.UCC) (Vernon 1968). The universal rule in other jurisdictions is that an implied warranty does not fall under the exception in the Code because, by its very nature, it cannot explicitly extend to future performance. *Stumler v. Ferry-Morse Seed Co.*, 644 F.2d 667, 671 (7th Cir.1981) (Indiana law); *Clark v. DeLaval Seperator Corp.*, 639 F.2d 1320, 1325 (5th Cir.1981) (Texas law); *Standard Alliance Industries, Inc. v. Black Clawson Co.*, 587 F.2d 813, 820 (6th Cir.1978), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979) (Ohio law); *Holdridge v. Heyer-Schulte Corp.*, 440 F.Supp. 1088, 1104 (N.D.N.Y.1977); *Binkley Co. v. Teledyne Mid-America Corp.*, 333 F.Supp. 1183, 1187 (D.C.E.D. Mo.1971), *aff'd*, 460 F.2d 276 (8th Cir.1972); *Wright v. Cutler-Hammer, Inc.*, 358 So.2d 444, 445–46 (1978); *General Motors v. Tate*, 257 Ark. 347, 352, 516 S.W.2d 602, 606 (1974); *Stoltzner v. American Motors Jeep Corp., Inc.*, 127 Ill.App.3d 816, 819–20, 82 Ill.Dec. 909, 469 N.E.2d 443, 445 (1984); *City of Carlisle v. Fetzer*, Iowa, 381 N.W.2d 627 (1986); *Rutland v. Swift Chem. Co.*, 351 So.2d 324, 325 (Miss.1977); *Grand Island School District No. 2 of Hall County, Nebraska v. Celotex Corp.*, 203 Neb. 559, 567–68, 279 N.W.2d 603, 609 (1979). *See also Sponseller v. Meltebeke*, 280 Or. 361, 365, n. 2, 570 P.2d 974, 976, n. 2 (1977); *Southern Burlington School District v.*

*Calcagin-Frazier-Zajchowski Architects, Inc.*, 138 Vt. 33, 48, 410 A.2d 1359, 1366 (1980). The most noted commentators in the field of commercial law agree that implied warranties cannot "explicitly" extend to future performance. 5 R. Anderson, *Anderson on the Uniform Commercial Code* § 2–725:90 (1984); 3 W. Hawkland, *Uniform Commercial Code Series* § 2–725:02, at 480 (1984); J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 11–9, at 419, n. 73 (2d ed. 1980); Special Project, *Article Two Warranties in Commercial Transactions*, 64 Cornell L.Rev. 30, 270 (1978); Annot., 93 A.L.R.3d 690, 692 (1979).

All three types of implied warranties have been held to be incapable of explicitly extending to future performance. *E.g. Grand Island*, 279 N.W.2d at 609 (fitness for a particular purpose); *Dickerson*, 710 P.2d at 625 (merchantability); *Nelligan v. Tom Chaney Motors, Inc.*, 133 Ill.App.3d 798, 479 N.E.2d 439, 442 (1985) (course of dealing).

Some courts have stated in *dicta* that an implied warranty may be extended to future performance. *E.g., Klondike Helicopters, Ltd. v. Fairchild*, 334 F.Supp. 890 (N.D.Ill.1971) (disapproved by *Wilson v. Massey-Ferguson*, 21 Ill.App.3d 867, 315 N.E.2d 580); *Mittasch v. Seal Lock Burial Vault*, 42 A.D.2d 573, 344 N.Y.S.2d 101 (1973) (decided on express warranty); *Bobo v. Page Engineering Co.*, 285 F.Supp. 664 (D.C.W.D. Pa.1967), *aff'd*, 395 F.2d 991 (3rd Cir.1968) (statute of limitations ran after discovery of breach); *Hempfield Area Joint School Building Authority v. Tectum Corp.*, 2 UCC Rep.Serv. 518 (Pa. C.P. Westmoreland Co. 1964) (summary judgment reversed on fact question of what type of warranty existed). We are not persuaded by this dicta. The Code's attempt to establish uniformity among the various jurisdictions suggests that we adhere to an interpretation consistent with the clear majority rule.

We hold, based on the rationale of the previous cases and the clear, unambiguous language of section 2.725(b), that an im-

plied warranty cannot be explicitly extended to future performance.

## EXPRESS WARRANTY

■ Express warranties that meet the "explicitness" exception of section 2.725(b) may extend to future performance. Courts construe the exception narrowly, with the emphasis on the term "explicitly." *Sellon v. G.M. Corp.*, 571 F.Supp. 1094, 1098 (D.Del.1983); *Binkley Co. v. Teledyne Mid-America Corp.*, 333 F.Supp. at 1187. *Nelligan*, 479 N.E.2d at 442. For an express warranty to meet the exception, it must make specific reference to a specific date in the future. *Black Clawson*, 587 F.2d at 820.

■ Certainteed represented that its "Dual 80" roof was "bondable up to 20 years." This roof was specifically added to the construction contract and affixed to Safeway's warehouse roof. A representation as to the description of the goods which becomes a basis of the bargain that the goods shall conform to the description is an express warranty. *Moore v. Puget Sound Plywood Inc.*, 214 Neb. 14, 332 N.W.2d 212, 214–15 (1983).

■ A fact question exists whether Certainteed's express warranty extends to future performance. In Certainteed's bill of exceptions, Robert A. George and an expert witness, E.T. Schreiber, were asked: "In the roofing industry, what is the meaning of the words '20-year bonded type roof,' insofar as the life-expectancy of the roof is concerned?" The formal bill reflects that both witnesses would have answered in substance, "It means a roof which will last at least 20 years before it has to be removed and replaced." Thus, it is not conclusively established that Certainteed's express warranty meant only that the roofing materials were of such a quality that a 20-year bond could have been obtained at the time the goods were tendered.

A case very similar to this cause is *Little Rock School District of Pulaski County v. Celotex Corp.*, 264 Ark. 757, 574 S.W.2d 669 (1978) (in banc). There, the school district sued Celotex, a roofing manufacturer, for breach of implied and express warranties in connection with roofing material affixed to a new school facility. Celotex represented its product to be a "two-ply 20-year roof," "bonded for up to 20 years," which contained a 20-year bond to cover defects caused by normal wear and tear. The trial court directed a verdict for Celotex on the basis that the warranty claims were not brought within the 4-year statute of limitations under UCC 2-275. The Supreme Court of Arkansas affirmed the trial court judgment barring the implied warranty claim, but reversed on the express warranty claims holding that a fact issue was raised by Celotex's representations whether the warranty explicitly extended to future performance. *Id.*, 574 S.W.2d at 675.

We hold that Safeway's implied warranty claim is barred by Tex. Bus. & Com. Code Ann. § 2.725 (Tex.UCC) (Vernon 1968). We hold that a fact issue exists whether Certainteed's express warranties that its roof was "bondable up to 20 years" is an explicit reference to future performance. We reverse the court of appeals' judgment insofar as it holds that there is no evidence of breach of express warranty between Safeway and Certainteed and remand the cause to the trial court for determination on the express warranty claim.

RAY and ROBERTSON, JJ., concur.

WALLACE, J., dissents.

RAY, Justice, concurring.

I concur in the court's judgment and agree with the with the reasoning contained in Justice Robertson's concurring opinion.

I write only to add my concern that, if this Court were to construe Tex.Bus. & Com. Code Ann. § 2.725 (Vernon 1968) to cut off an injured party's cause of action prior to the date that cause of action accrued, there would be serious questions raised about the constitutionality of § 2.725 under the Open Courts provision of our Constitution. *See Nelson v. Krusen*, 678

S.W.2d 918 (Tex.1984); Tex. Const. art. III, § 3.

I would also note that although this court has this day refused application for writ of error, no reversible error in *Weeks v. J.I. Case,* 694 S.W.2d 634 (Tex.App.— Texarkana 1985, writ ref'd. n.r.e.), involving the construction of § 2.725, the constitutionality of that section was likewise not at issue in that case.

ROBERTSON, Justice, concurring.

I concur in the result reached by the majority.

This case involves the alleged breach of express and implied warranties in the construction of a warehouse roof. In 1970 Safeway Stores contracted for the construction of a warehouse, which was completed that same year. The original plans and specifications called for a "twenty-year bonded type built up roof." Safeway purchased roofing materials manufactured by Certainteed Corporation. In March of 1977, Safeway began to observe leaks in the roof. By 1979 they were severe. Safeway filed this action in 1980 against Certainteed and others alleging breach of implied and express warranties.

The court of appeals held that any implied warranties were barred by the four year statute of limitations. Safeway contends the statute should not begin to run until breach of the implied warranty was discovered. The Tex.Bus. & Com. Code Ann. § 2.725 (Tex.U.C.C.) (Vernon 1968) provides:

(a) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued....

(b) A cause of action accrues when the breach occurs regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of

action accrues when the breach is or should have been discovered.

The language of this statute clearly precludes the application of the discovery rule except in situations where there is an explicit reference to future performance. The court of appeals went on to say that "an implied warranty by its very nature cannot explicitly extend to future performance. *Clark v. DeLaval Separator Corp.,* 639 F.2d 1320 (5th Cir.1981); *Southerland v. Northeast Datsun, Inc.,* 659 S.W.2d 889 (Tex.App.—El Paso 1983, no writ)." 687 S.W.2d at 224. Although the cases cited do agree with the court of appeals' statement, they offer no analysis as to the nature of an implied warranty that requires this result. The majority points out that "explicit" and "implied" are contradictory terms. This distinction is nonsequitur. The denotation "implied warranty" does not mean that what was warranted was expressed indirectly in the colloquial sense of the term "implied," but that the warranty is created by *implication of law.* The U.C.C. infers that a warranty was intended; not that parties said one thing but implied another and therefore there can be no explicit statements. Additionally, in section 2.725, "explicitly" is an adverb modifying "extends;" it does not and cannot modify the noun "warranty." Under section 2.725 the extension to future performance, not the warranty, must be explicit, whether the warranty arises expressly or by implication.

Analysis of the nature of most implied warranties finds the general rule to be true that implied warranties by their nature cannot explicitly extend to future performance. Many implied warranties arise without explicit statements or standards relevant to the goods, however nothing precludes an explicit extension to future performance by all implied warranties.

There are three types of implied warranties: merchantability, usage of trade, and fitness for a particular purpose. *See* Tex. Bus. & Com.Code Ann. §§ 2.314–15 (Tex.U. C.C.) (Vernon 1968). A warranty of fitness for a particular purpose would arise if Cer-

tainteed had reason to know that the materials contracted for had to last a particular length of time and that Safeway was relying on Certainteed's skill to furnish goods that would last for twenty years. *Id.* § 2.315. This warranty does not rely on any advertisement by Certainteed. Certainteed was aware of the contract provisions between Safeway and the contractor which called for a four-ply twenty-year roof. Safeway not only relied on Certainteed, Safeway had to be convinced that Certainteed's two-ply roof would fit Safeway's needs and work just as well.

The majority holds an extension to future performance is explicit when the seller says, "These goods will last twenty years," but not when the buyer asks, "I need goods that will last twenty years, can you supply them?" The drafters of the Code did indeed intend to reserve the benefits of an extended warranty to those who bargained for them. *See Raymond-Dravo-Langerfelder v. Microdot, Inc.,* 425 F.Supp. 614, 618 (D.Del.1976). The majority finds the warranty is bargained for in the first situation but not in the second. There is no policy or authority for making that distinction.

For goods to be merchantable, they must "pass without objection in the trade under the contract description...." Tex.Bus. & Com.Code Ann. § 2.314(b)(1) (Tex.U.C.C.) (Vernon 1968). There is a fact issue whether the materials for a twenty-year bondable roof must be able to last twenty years to pass without objection in the trade and if other implied warranties may arise from the usage of trade. *Id.* § 2.314(c). The majority construes that by doing so we would be contrary to the precedent of other jurisdictions on this question. With the exception of those cases which simply hold all implied warranties by their nature never extend to future performance and then cite each other, I agree with those cases which found the nature of the specific warranty before those courts did not allow an explicit extension to future performance. *See, e.g., Wilson v. Massey Ferguson, Inc.,* 21 Ill. App.3d 867, 315 N.E.2d 580 (1974); *Wright v. Cutler-Hammer, Inc.,* 358 So.2d 444

(Ala.1978); *Everhart v. Rich's, Inc.,* 128 Ga.App. 319, 196 S.E.2d 475 (1973). This conclusion tracks the language of the statute and permits the limited exception where the facts allow. Certainly the burden of proving that there was a twenty year duration standard would be great. In most warranty of merchantability or usage of trade cases, the implied warranty will not explicitly extend to future performance because there are no explicit standards. This is a question of fact and should be determined by the jury. *See* U.C.C. Comment 2 § 2.315.

A final point on implied warranties; the majority argues that all implied warranties warrant the condition of the goods at the time of delivery. This position is without merit and denies the plain language of the statute. *See* Tex.Bus. & Com.Code § 2.315 (Tex.U.C.C.) (Vernon 1968). A warranty of fitness for a particular purpose warrants that a good will fulfill the needs of the buyer of which the seller was aware. This court now holds that the need can never be to last a certain length of time over four years.

Safeway contends that Certainteed made an express warranty that the roofing materials would last for twenty years by advertising that it was "bondable up to twenty years." I agree with the court of appeals that this language is unambiguous. The express warranty Certainteed made was that the materials were of such a quality that a twenty-year bond could have been obtained at the time the goods were tendered. Contrary to the statement by the majority, the court of appeals did not find that the express warranty was barred by the statute of limitations, but held that there was no evidence of a breach of the express warranty. As there was no evidence, the trial court's instructed verdict was correct as a matter of law.

The majority holds that the description of the goods that they were of such quality that a twenty-year bond could have been obtained creates an inference that they would last twenty years. The conclusion

there is no evidence that the express warranty meant only that a bond could be obtained ignores the language of Certainteed's warranty. To remand this case the court *must* find the language of the express warranty made by Certainteed to be ambiguous—it does not so hold. I would remand to the trial court for the jury to determine if the implied warranties explicitly extended to future performance.

WALLACE, Justice, dissenting.

I respectfully dissent. The contractual provision that a roof is "bondable up to 20 years," by its nature, means *capable* of being bonded for a period of up to 20 years. In other words, the product is made of such quality that a surety is willing to issue a 20 year bond, as opposed to a ten year bond for lesser quality materials or a 30 year bond for higher quality materials. The surety bond itself is what protects the purchaser against repairs or defects in the roof. *Grand Island School District v. Celotex Corp.,* 203 Neb. 559, 279 N.W.2d 603 (1979). It would be logically inconsistent for a seller to represent on the one hand that the purchaser could obtain a repair bond and at the same time guarantee the product against repairs and defects. *See Little Rock School District of Pulaski City v. Celotex,* 264 Ark. 757, 574 S.W.2d 669, 675 (1978) (Smith, J., dissenting).

Furthermore, even if this term could be construed as an express warranty, what it expresses is clearly confined to a specific point in time: i.e., the time the roof is completed. To say, as the majority does, that "bondable up to 20 years" may be construed as an explicit reference to future performance is tantamount to saying that the purchaser of the roof could approach a surety at any time and obtain a bond for 20 years into the future. The majority makes the term "bondable" synonymous with "bonded" and, in doing so, defies the plain meaning of the term and re-forms the manner in which it is used in the construction industry.

I would hold that Certainteed made no express warranty to Safeway that the roof would last for 20 years and, accordingly, affirm the judgment of the court of appeals.